

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | Criminal Action No.: 0:24-48-MGL-1 |
| § | |
| DE'TERIO JATAVIOUS BRICE, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

**I.     INTRODUCTION**

Pending before the Court is Defendant De'Terio Jatavious Brice's (Brice) motion to suppress evidence seized as the result of a warrant-based search of his mobile home. Having carefully considered the motion, the response, the oral arguments, the record, and the applicable law, it is the judgment of the Court Brice's motion will be denied.

**II.    FACTUAL AND PROCEDURAL HISTORY**

The Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

On January 25, 2022, John Hurst (Hurst) called 911 to report shots fired at the intersection of Winterberry Road and Marion Street in Rock Hill, South Carolina. Hurst stated he was in his yard on Marion Street when he heard a loud argument, which sounded like it was between two

males, followed by a gunshot. Hurst then saw a black male flee the scene in a solid black Chevrolet car with large, rimmed tires. The suspect pulled into a nearby gas station then turned onto Adnan Church Road, heading toward Highway 5.

Sergeant Samuel Bruining (Bruining) was the first officer to arrive on scene. Bruining spoke with Hurst, who reiterated the suspect was driving a blacked-out Chevrolet sedan with big rims. Hurst advised Bruining the suspect drove down Adnan Church Road in the direction of Highway 5 and stated his neighbors, Meghan and Ryan Rasor, also witnessed the incident.

Having driven down Adnan Church Road to respond to the scene and seeing no vehicles that matched Hurst's description, Bruining believed the suspect may have driven into one of the adjacent neighborhoods. He therefore asked Deputy Andrew Fletcher (Fletcher) to drive through Adnan Hills Mobile Home Park—the first neighborhood on the suspect's alleged route—to see if any vehicles fit Hurst's description. Around this time, another officer found a spent shell casing near the intersection of Winterberry Road and Marion Street, thus corroborating Hurst's story.

After canvassing Adnan Hills Mobile Home Park, Fletcher located a vehicle similar to the one Hurst described at 335 Clayton Avenue. Fletcher sent photographs of the vehicle to Bruining, who was still with Hurst. Hurst identified the vehicle, stating he was "almost positive" it was the one in which the suspect fled the scene. Upon receiving confirmation from Bruining, Fletcher parked his patrol car behind the vehicle to avoid any attempted flight. He then approached the mobile home and made contact with Brice.

Fletcher informed Brice his vehicle matched the description of a vehicle involved in a shooting incident on Marion Street. At Fletcher's request, Brice retrieved his driver's license from inside the mobile home.

After obtaining his driver's license, Brice remained on the porch for a brief period before retreating inside the mobile home. Fletcher asked Brice to come back outside, but Brice refused, insisting he needed to call his probation officer. When Bruining arrived a few minutes later, Brice had locked the front door. Given Brice's evasiveness and having heard rumbling noises behind the door, Bruining suspected Brice could be concealing evidence and instructed him to come back outside. Brice eventually reemerged.

To distance Brice from potential weapons and prevent any further barricading attempts, the officers led Brice to the front of Fletcher's patrol car. Bruining advised Brice he was being detained but was not under arrest. Bruining then advised Brice of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). When Brice refused to acknowledge his *Miranda* rights, Bruining stepped away to talk to Investigator Devin Askew (Askew).

Around this time, Brice was able to get his probation officer on the phone. Brice informed his probation officer of the situation and passed his phone to Deputy Ryan Missildine (Missildine). While Missildine spoke to the probation officer, Fletcher began to re-read Brice his *Miranda* rights. Brice, however, started backing away from the patrol car, putting more and more distance between himself and the car. Concerned for potential flight and given the nature of the crime, the officers attempted to handcuff Brice. Brice resisted, which resulted in him being tackled to the ground and handcuffed.

After tensions calmed down, Bruining reiterated Brice's vehicle matched the description of a vehicle involved in a nearby shooting and advised Brice he was being detained for questioning. Brice expressed his willingness to cooperate, so the officers allowed him to stand back up in front of the patrol car. Fletcher again read Brice his *Miranda* rights, to which Brice replied, "I know my rights."

3

As Bruining approached the mobile home to conduct a protective sweep, he realized Brice had locked the door. He thus directed Sergeant Caleb Bucy (Bucy) to ask Brice for his keys. Brice was reluctant at first. But, once Bruining confirmed the sweep was solely to confirm no other suspects were inside the mobile home, Brice surrendered his keys. The protective sweep, which took less than three minutes, failed to reveal any evidence or additional suspects.

Askew procured a search warrant for 335 Clayton Avenue based on the foregoing information. As a result of the search, officers seized one 2014 Chevrolet Impala, one black nylon holster, two 9mm Luger rounds, one Century Arms 7.62 x 39 VSKA rifle with no serial number, two empty thirty-round magazines, and two Tulammo .223 rounds.

After the search was completed, Lieutenant Joey Wallace (Wallace) met with Meghan and Ryan Rasor, the neighbors Hurst mentioned during his initial conversation with Bruining. Although neither Meghan nor Ryan witnessed the actual shooting, Ryan saw a black male standing near a black car just before he heard gunfire. During a drive by of 335 Clayton Avenue, Ryan positively identified Brice and his vehicle.

A grand jury indicted Brice for felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)910, 924(a)(2), and 924(e). Brice later filed this motion to suppress, and the government responded. The Court held a hearing, during which the government called Fletcher, Bruining, Bucy, and Askew as witnesses. Brice declined to call any witnesses.

After hearing the testimonial evidence presented by the government and both parties' oral arguments, the Court took the matter under advisement. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

### III.   STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

As per *Terry v. Ohio*, 392 U.S. 1 (1968), "law enforcement officers may reasonably detain a person temporarily for investigative purposes when they have an objectively reasonable and particularized suspicion that the person has committed or is committing a crime." *United States v. Brown*, 114 F.4th 253, 257 (4th Cir. 2024) (citing *United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008)). Such suspicion exists where "the 'totality of the circumstances' presented the detaining officer with a 'particularized and objective basis' to conclude that a crime may have been committed or was being committed." *Black*, 525 F.3d at 364 (quoting *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004)). "[R]elevant to the totality of circumstances are various individual factors traditionally relied upon by police officers, such as . . . whether the suspect engaged in evasive behavior or acted nervously[.]" *Mayo*, 361 F.3d at 806; *see Illinois v. Wardlow*, 528 U.S. 119, 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").

An investigative detention "can cross the line and turn into a[] [*de facto*] arrest under certain circumstances." *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001). Such circumstances exist where "the totality of the circumstances" indicate the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). Even still, a *de facto* arrest supported by probable cause is lawful. *See United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984) (explaining a *de facto* arrest is legal where "probable cause arose before [the] *de facto* arrest c[ould] be posited").

5

As the Fourth Circuit explained in *United States v. Laudermilt*, where officers arrest an individual inside or outside a home,

> they are entitled to perform a further "protective sweep" of the h[ome] when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." . . . .
>
> A protective sweep is limited to "a cursory inspection of those spaces where a person may be found" and should last "no longer than it takes to complete the arrest and depart the premises." . . . "[T]he sweep may last no longer than needed 'to dispel the reasonable suspicion of danger' and no longer than needed to arrest the suspect and leave the premises." . . . . [T]he "linchpin of the protective sweep analysis is not 'the threat posed by the arrestee, [but] the safety threat posed by the house, or more properly by unseen third parties in the h[ome].'"

677 F.3d 605, 610 (4th Cir. 2012) (fourth alteration in original) (first quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990); then quoting *Buie*, 494 U.S. at 335–36; then quoting *United States v. Green*, 599 F.3d 360, 376 (4th Cir. 2010); and then quoting *United States v. Jones*, 667 F.3d 477, 484 (4th Cir. 2012)).

## IV.   DISCUSSION AND ANALYSIS

Brice first argues he was illegally seized. Specifically, Brice contends he was detained when ordered to exit the mobile home, and the detention was unsupported by reasonable suspicion.

As explained above, a spent shell casing confirmed a shooting took place at or near the intersection of Marion Street and Winterberry Road. Hurst described the suspect as a black male and stated the suspect was driving a blacked-out Chevrolet sedan with large, distinct wheels. Bruining, who was responding from nearby, drove the route Hurst said the suspect took, but he never passed a vehicle matching the description. This made Bruining believe the suspect was in a neighborhood on Adnan Church Road, such as Adnan Hills Mobile Home Park. Not only did

6

Brice's vehicle—a black 2014 Chevrolet Impala with large rims—fit Hurst's description, but Hurst also visually confirmed Brice's vehicle was the one he saw fleeing the scene.

After Fletcher made initial contact with Brice, Brice barricaded himself inside the mobile home and locked the front door. As officers repeatedly asked Brice to open the door, Bruining heard what sounded like Brice rummaging around inside. Indeed, on body-worn camera footage, the officers can be heard discussing whether another person was inside and whether Brice was trying to hide evidence from the shooting.

Based on the totality of these circumstances, the Court determines the detention was supported by reasonable suspicion. In other words, the circumstances presented the officers "with 'a particularized and objective basis' to conclude that a crime may have been committed or was being committed." *Black*, 525 F.3d at 364 (quoting *Mayo*, 361 F.3d at 805).

Inasmuch as Brice contends the detention escalated to a *de facto* arrest when he was tackled to the ground and handcuffed, the Court agrees the totality of the circumstances then indicated his "freedom of action was curtailed to a degree associated with formal arrest." *Park*, 250 F.3d 843 at 850. Nevertheless, the Court concludes the arrest was supported by probable cause and was thus lawful, as the facts and circumstances presented to the officers "warrant[ed] the belief of a prudent person that [Brice] had committed . . . an offense." *Manbeck*, 744 F.2d at 376 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Brice next contends the officers lacked probable cause to search his mobile home, and the protective sweep exception is inapplicable. Even assuming the protective sweep was proper, Brice insists the officers exceeded its scope by searching behind his headboard.

Brice gave Bucy his keys to the mobile home after Bruining made clear the sweep was solely to ensure no one else was inside. In doing so, Brice impliedly consented to the sweep. *See*

*Birchfield v. North Dakota*, 579 U.S. 438, 476 (2016) ("It is well established that a search is reasonable when the subject consents and that sometimes consent to a search need not be express but may be fairly inferred from context[.]" (internal citations omitted)).

In any event, considering Brice's evasiveness, the officers' observations as described above, and the nature of the crime, the Court concludes the officers had "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Laudermilt*, 677 F.3d at 610. As per *Laudermilt*, the fact Brice was arrested outside the mobile home is nondispositive. *Id.* at 611 n.2.

Moreover, the Court finds the sweep was reasonable, as it took less than three minutes and consisted of the officers cursorily inspecting only those spaces—including the gaping, laundry-filled space behind Brice's diagonal headboard—in which individuals could hide.

Regarding the full search of Brice's mobile home, the Court notes it was based upon a warrant. Brice asserts certain portions of the warrant are tainted by the protective sweep. But, because the Court has determined the protective sweep was lawful, this argument is necessarily deemed as moot.

### V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Brice's motion to suppress, ECF No. 40, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 27th day of January 2025, in Columbia, South Carolina.

                                                            s/ Mary Geiger Lewis
                                                            MARY GEIGER LEWIS
                                                            UNITED STATES DISTRICT JUDGE